# UNITED STATES DISTRICT COURT
for the
District of Maryland

FILED ___ ENTERED
___ LOGGED ___ RECEIVED

JUN 09 2014

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>Samuel Loring Morison<br><br>*Defendant(s)* | Case No. 14-mj-1368-SKG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Beginning in or after July of 2010__ in the county of _____ in the _____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 641 | Theft of Government Property |

This criminal complaint is based on these facts:

See Attached Affidavit of Special Agent Brian Kelley.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Brian Kelley
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/9/14

_____
*Judge's signature*

City and state: Baltimore, Maryland

Susan K. Gauvey, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

14-mj-1368-SKG

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

1. Special Agent (SA) Brian Kelley of the Naval Criminal Investigative Service (NCIS), being duly sworn, states and deposes the following:

2. Your Affiant, Brian Kelley, is an NCIS Special Agent and has been so employed since January 2008. Prior to NCIS, I was with the United States Park Police (USPP) for approximately four years. I am currently assigned to a reactive crime squad at the Washington DC Field Office, (WFO) and have been so assigned since October 2009. The NCIS WFO primarily specializes in the investigation of felony level criminal offenses wherein the Department of Defense has an underlying interest. In that capacity, I am charged with gathering evidence of crimes against the United States Government. I have experience and specialized training regarding investigations into violations of federal laws, to include but not limited to, controlled substance violations, sexually based offenses, fraud, and theft.

3. As a federal agent, I am authorized to conduct investigations of suspected criminal violations of federal laws and I have the authority to execute search warrants and arrest warrants issued under the authority of the United States.

4. This affidavit is made in support of a complaint against SAMUEL L. MORISON, charging him with theft of government property or records, in violation of 18 U.S.C. §641. The statute reads as follows:

18 U.S.C. §641, "Theft of government property or records," provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property

made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stole, purloined or converted, shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the count for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The word "value" means face, par, or market value or cost price, either wholesale or retail, whichever is greater.

## PROBABLE CAUSE

5. On April 12, 2014, a Cooperating Witness (hereinafter "CW"), who is a re-seller of books and other documents, met with SAMUEL L. MORISON at MORISON's residence, 1482 Carlyle Court, Crofton, Maryland. MORISON arranged the meeting with the "CW" to discuss the sale of historical records in his possession that related to his grandfather, Rear Admiral (RADM) Samuel E. Morison. RADM Morison worked extensively as a Naval Historian, and was tasked by President Roosevelt to chronicle the activities of the United States Navy during World War II. During the visit, the "CW" reviewed records which consisted of maps, charts, illustrations, negatives, textual materials, and photographs. MORISON offered to sell those items and additional Navy photographs and documents that were stored in separate file cabinets at MORISON's residence in Maryland. The "CW" agreed to take possession of the records relating to RADM Morison's work during World War II and place them on consignment through his bookstore and offer them for sale through EBay. The "CW" agreed to come back to MORISON's residence at a later date, and to review the additional Navy photographs being offered for sale by MORISON.

6. On or about April 19, 2014, the "CW" sent a driver to MORISON's residence, where the historical records were collected and transported back to the bookstore operated by the "CW" in Maryland.

7. On May 12, 2014, Special Agent's assigned to the Archival Recovery Team (ART) with the National Archives and Records Administration (NARA), Office of Inspector General (OIG), traveled to the bookstore operated by the "CW" to review the historical records being offered for sale through EBay. The "CW" appraised the historical records obtained on consignment from MORISON at $5,000.00.

8. On May 13, 2014, ART agents met with a retired Navy employee, Chuck Haberlein, at the bookstore to review the records being offered for sale. Haberlein previously worked for over 30 years as the Curator assigned to the Naval History and Heritage Command (NHHC), Operations Archives Branch, Naval Historical Center (hereinafter "Navy Archives"), at the Washington Navy Yard in Washington, DC. Haberlein identified the records obtained by the "CW" from MORISON as items belonging to the Navy Archives. Haberlein confirmed the records were from the "Office Files of Rear Admiral Samuel E. Morison" collection. Haberlein is personally familiar with the collection of records pertaining to RADM Morison's work in and with the U.S. Navy. The records consigned by MORISON to the "CW" were used by RADM Morison to document Naval Operations during World War II. These records are the property of the United States Government. MORISON was never given authority to remove the records from the Navy Archives.

9. Your affiant researched RADM Samuel E. Morison and found that, on May 5, 1942, Morison was commissioned Lieutenant Commander, US Naval Reserve, and was called to active duty by President Roosevelt as a Naval Historian. Two years later, Morison was promoted to the rank of Rear Admiral and eventually wrote *The History of United States Naval Operations in World War II*, which was published in 15 volumes between 1947 and 1962. The research

documents utilized by RADM Morison in those published works are known as the "Office Files of RADM Morison Papers."

10. Your affiant also reviewed two recorded telephone calls between the "CW" and MORISON. The calls confirmed that MORISON offered the historical records of the United States Navy for sale through the bookstore operated by the "CW." In addition, your affiant confirmed that MORISON had additional Navy records at his home, 1482 Carlyle Court, Crofton, MD, which he had offered for sale. MORISON requested $15,000.00 for the additional records he stored at his residence.

11. Your affiant learned that MORISON was a paid contractor/researcher at the Navy Archives. His tenure began in March of 2010 and his duties involved conducting research and answering questions pertaining to Naval History, utilizing records contained within the Navy Archives to assist him. Your affiant learned that MORISON had access to the "Office Files of RADM Morison Papers," his grandfather's papers, which were stored at the Navy Archives.

12. On May 21, 2014, your affiant participated in the execution of a court-authorized search warrant at MORISON's residence. Agents recovered approximately thirty-four (34) boxes of evidence that have been identified as government records and property stolen from the Navy Archives. MORISON cooperated with agents during the execution of the search warrant. He waived his Miranda rights and spoke with agents. MORISON admitted to his theft of historical records from the Navy Archives and provided a signed statement admitting his theft of government property. The evidence collected from the warrant has been transported to NARA for processing and review.

13. Navy Archives personnel assigned to the NHHC have examined the evidence seized in the warrant. All of the items seized from MORISON's residence belong to the United States Navy and are government records and property that were archived at the NHHC. I have

4

also learned that on or about February 13, 2013, the "Office Files of RADM Morison Papers" were reported missing from the Navy Archives by an NHHC employee.

14. Your affiant has learned that MORISON signed a contract with the Naval Historical Foundation on March 19, 2010, and was hired as a part-time researcher. He was also tasked to work on a joint project with the foundation involving a proposed naval publication involving the war on terrorism. This position gave MORISON access to the property and records known as the "Office Files of RADM Morison Papers."

15. Haberlein, the retired curator, confirmed that many of the items collected from the search warrant at MORISON's residence and all of the items MORISON consigned to the bookstore operated by the "CW" came from the collection known as the "Office Files of RADM Morison Papers" at the Navy Archives. Haberlein retired as curator at the Navy Archives on or about July 2, 2010. At the time of his retirement, Haberlein confirmed that the collection known as the "Office Files of RADM Morison Papers" were the property of the United States Navy and were stored at the Navy Archives. MORISON was never given authority to remove the records from the Navy Archives.

16. Based up information set forth above, your affiant believes that MORISON stole, purloined and knowingly converted to his own use the "Office Files of RADM Morison Papers," and that the thefts were committed between July 2010 and February 2013 while MORISON was employed for the Naval Historical Foundation as a part-time researcher.

## CONCLUSION

WHEREFORE, based on the facts set forth herein, your affiant submits that there is probable cause to believe that SAMUEL L. MORISON committed theft of government property and records, said property having a value in excess of $1,000, in violation of 18 U.S.C. §641.

_____
Special Agent Brian Kelley
Naval Criminal Investigative Service

Sworn to before me this ___9___ day of June 2014 at __3:40 pm__ hours.

_____
Susan K. Gauvey
United States Magistrate Judge